# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTIES OF SUFFOLK AND NANTUCKET
## MARCH TERM 1854, AT BOSTON.

▬

PRESENT:

Hon. LEMUEL SHAW, Chief Justice.
Hon. CHARLES A. DEWEY,
Hon. THERON METCALF,
Hon. GEORGE T. BIGELOW, ⎬ Justices.
Hon. BENJAMIN F. THOMAS,
Hon. PLINY MERRICK.

———

THEODORE FISHER *vs.* PATRICK McGIRR & others.

COMMONWEALTH *vs.* MOSES ALBRO.

JOSIAH HERRICK *vs.* GORHAM SMITH.

Where part only of a statute is repugnant to the constitution, that part only will be adjudged void.

The legislature may declare the possession of certain articles of property, either absolutely, or in particular places and under particular circumstances, to be unlawful, because they would be injurious, dangerous, or noxious; and may provide for the seizure and confiscation or destruction thereof by due process of law.

The fourteenth section of the statute of 1852, *c.* 322, concerning the manufacture and sale of spirituous and intoxicating liquors, is contrary to the fourteenth article of the Declaration of Rights, declaring the right of the subject to be free from unreasonable searches and seizures; because it neither requires the name of any person, keeping or depositing the liquors with intent to sell, to be named in the complaint or in the search

warrant for the liquors; nor limits the officer's authority and right of seizure to the liquors described in the complaint, nor to those intended for sale, but directs him to seize any liquors found in the place described in the complaint. This section also disregards other precautions and safeguards for the security of persons and property prescribed by the Declaration of Rights; inasmuch as it provides for the destruction of private property, and the punishment of its owner or keeper, without his being duly charged with any offence, or being summoned (unless known to the officer) to appear before the magistrate, and without giving him opportunity to defend and to meet the witnesses against him face to face, and providing for legal proof and trial of the offence of keeping the liquors with intent to sell. This section is therefore unconstitutional; and all proceedings under it are void, even when so framed and conducted as to avoid these objections.

The owner of any intoxicating liquors, seized by an officer by virtue of a warrant issued under *St.* 1852, *c.* 322, § 14, may maintain an action against the officer to recover damages for such taking, notwithstanding § 19 of the same statute, which provides that "no action of any kind shall be had or maintained, in any court in this commonwealth, for the recovery or possession of intoxicating liquors, or the value thereof, except such as are sold or purchased in accordance with the provisions of this act."

A prisoner, committed by a magistrate whose want of jurisdiction appears on the face of the proceedings, will be discharged on *habeas corpus.*

FISHER sued McGirr, a constable of Sandwich, and two others, in an action of tort, at the last September term of the court of common pleas for the county of Barnstable, for forcibly entering nis dwelling-house, and searching the same, and taking and carrying away a quantity of brandy and other spirituous liquors, with the barrels, demijohns, jugs and bottles, in which they were contained, the property of the plaintiff.

The defendants, in their answer, admitted the entry, search, taking and carrying away, as alleged in the declaration, and averred that they had a right, and were bound in law, to take said articles, and did take them, by virtue of a search warrant issued by a magistrate under *St.* 1852, *c.* 322, § 14, upon a complaint under oath; (which warrant and complaint were made part of the answer;) that said warrant was put into the hands of McGirr, as a constable, for service, and was served by him, pursuant to the order thereof, with the aid of the other defendants, employed by him for that purpose; that said articles were found kept and deposited in the dwelling-house of the plaintiff, and were therefore duly seized and safely kept for final action and decision on said complaint; that the defendants, in the service of said warrant, complied in all respects with the provisions of law, and that no other force was used, or search made,

or disturbance created, than was necessary for the reasonable service of the warrant; and that the articles taken were duly carried before the magistrate and disposed of by him and according to his order and judgment. And the defendants said that the plaintiff could not maintain his action, because he did not aver that said liquors were purchased or kept by him for sale in accordance with the provisions of *St.* 1852, *c.* 322; and because they were not so kept.

This action was submitted to the court of common pleas upon a case stated. The complaint, the search warrant, the officer's return thereon, and the order of the magistrate, (which are copied in the margin,*) together with the answer, were made part of the case.

---

\* Commonwealth of Massachusetts. Barnstable, ss. To Lothrop Davis, Esquire, justice of the peace within and for the county of Barnstable, Isaac Keith, Francis Kern and William C. Chipman, all of Sandwich in the county of Barnstable, being voters in said Sandwich, on the fourth day of August, in the year of our Lord one thousand eight hundred and fifty two, in behalf of said commonwealth, on oath complain, that they have reason to believe, and do believe, that on the twenty-seventh day of July in said year, at said Sandwich, spirituous or intoxicating liquors were and still are kept and deposited in the dwelling-house situated in said Sandwich, occupied by one Theodore Fisher, and intended for sale by him, the said Theodore Fisher, the said Theodore Fisher not being authorized to sell the same in said Sandwich under the provisions of the act entitled " An act concerning the manufacture and sale of spirituous or intoxicating liquors;" whereby said liquors have become forfeited to be destroyed; and said Theodore Fisher, by reason of the premises, has incurred and become liable to pay a fine of twenty dollars to the use of said commonwealth and costs of prosecution, or to be imprisoned thirty days in default of payment.

We therefore pray that due process may be issued to search said dwelling-house where said liquors are believed to be deposited, and if there found that the same may be seized and safely kept until final action and decision had thereon; and that the said Theodore Fisher may be summoned forthwith to appear before the said justice to make answer to this complaint, and to do and receive such sentence as may be awarded against him.                    Isaac Keith,

Francis Kern,

William C. Chipman.

Barnstable, ss. On the fourth day of August aforesaid, the said Keith, Kern and Chipman make oath that the above complaint, by them signed, is true.                    Before me, LOTHROP DAVIS, Justice of the Peace.

The defendants contended that, under the provisions of St. 1852, c. 322, this action could not be maintained for the recovery of the value of the liquors; and that the proceedings before the magistrate and the warrant issued by him justified the defendants in their proceedings as set forth in their answer.

The plaintiff contended that § 19 of said statute (which provides that " no action of any kind shall be had or maintained, in any court in this commonwealth, for the recovery or possession of intoxicating liquors, or the value thereof, except such as are sold or purchased in accordance with the provisions of this act,") did not apply to a case of this kind, and that, if it did so apply, this provision was unconstitutional and void; and also contended that the proceedings and warrant did not furnish a justification to the defendants.

It was agreed that if the court should be of opinion that this action could be maintained, and that said proceedings did not

Barnstable, ss.    Sandwich, August 4, 1852.    I, Francis Kern, one of the complainants within named, being duly sworn on oath, do say, that I have reason to believe and do believe that spirituous or intoxicating liquors have been sold in the dwelling-house occupied by Theodore Fisher in said Sandwich, within the time of one month from the above date, that the said Theodore Fisher has for a long time prior to the twenty-second day of July last, been engaged in selling intoxicating liquors in violation of law; that a short time previous to said last date, the said Theodore Fisher procured a large quantity of intoxicating liquors, and that within said period of one month, individuals long in the habit of using intoxicating liquors have frequented said house; and in one instance, liquor has been brought away from said house, as I the said Francis Kern have been informed and verily believe.    Francis Kern.

Barnstable, ss.    August 4, 1852.    Then Francis Kern made oath to the truth of the above declaration by him subscribed.

Before me, LOTHROP DAVIS, Justice of the Peace.

Commonwealth of Massachusetts.    Barnstable, ss.    To the sheriff of our said county of Barnstable, or either of his deputies, or either of the constables of Sandwich or either of the towns within said county."    [The complaint was then recited.]    " Therefore, in the name of the Commonwealth, you are required to enter, in the day time, the dwelling-house named in said complaint, and there make careful and diligent search for the same, and if such liquors be found therein, to seize and safely keep the same until final action and decision be had on said complaint; and you are alike required to summon said Theodore Fisher forthwith to appear before me, the said justice, to show cause, if any he have,

furnish a justification to the defendants, the question of damages should be submitted to a jury upon such principles as the court should direct, unless the parties should agree to submit that question to an assessor. The court of common pleas gave judgment for the defendants, and the plaintiff appealed.

This case was argued at the last October term at Plymouth.

*G. Marston,* (*N. Marston* was with him,) for the plaintiff. I. This action may be maintained to recover the value of the liquors seized by the defendants. The provisions of *St.* 1852, c. 322, § 19, apply only to actions sounding in contract, for the recovery of liquors sold, or of their price, and not to actions for a tortious taking. That section, if applicable to this action, is unconstitutional and void. The liquors are property, and the owner is entitled to all the protection which the constitution of Massachusetts throws over property. Declaration of Rights, arts. 1, 10, 11, 12, 15.

---

why said liquors should not be declared forfeited to be destroyed, and he be adjudged and held to pay a fine of twenty dollars, to the use aforesaid and costs of prosecution. Witness, Lothrop Davis, Esquire, our said justice, at Sandwich aforesaid, this fourth day of August, in the year of our Lord one thousand eight hundred and fifty two. LOTHROP DAVIS, Justice of the Peace.

Barnstable, ss. August 4, 1852. By virtue of the within warrant, I have searched the premises named within, and have found one half barrel of cherry brandy, one demijohn of brandy, one jug of New England rum, one bottle of New England rum, one bottle of gin and one bottle of brandy, which I have before Lothrop Davis, Esquire. I also summoned the within named Theodore Fisher to appear forthwith before said Lothrop Davis, Esquire, and he appeared.

PATRICK McGIRR, Constable of Sandwich.

Commonwealth of Massachusetts. On complaint of Isaac Keith, Francis Kern and William C. Chipman, search warrant for intoxicating liquors, *vs.* Theodore Fisher, before Lothrop Davis, justice of the peace, August 4th 1852. In the above entitled cause one half barrel of cherry brandy, one demijohn of brandy, one jug of New England rum, one bottle of gin, one bottle of brandy, and one bottle of New England rum, having been found and taken by the officer, and the respondent failing to prove that said intoxicating liquors were lawfully kept, the said liquors are by me, the said justice, declared forfeited; and it is ordered by me the said justice, that the same be destroyed by Patrick McGirr, constable of Sandwich, in presence of William C. Chipman, of Sandwich. In testimony whereof, I have hereto set my hand, this fourth day of August, eighteen hundred and fifty two. LOTHROP DAVIS, Justice of the Peace.

1 *

II. The process, under which the defendants acted, furnishes no justification, because of the following defects therein. 1. The oath of one of the complainants does not state that any liquors had been sold by the plaintiff, or by the occupant of the dwelling-house named, or by any one by his consent or permission. 2. The complaint does not allege that the liquors complained of were intended for sale in the dwelling-house therein named; nor that liquors were then kept therein for sale; nor that any sale was made after the statute of 1852 took effect. "Within the time of one month" might have been previous to July 22d, 1852. 3. It does not appear by the warrant that either of the complainants made oath or affirmation that he had reason to believe and did believe that liquors had been sold in the dwelling-house by the plaintiff, or by his consent or permission, within one month; and were then kept therein for sale. *Sanford* v. *Nichols*, 13 Mass. 288. Nor does the warrant allege that any liquors had been kept for sale in the dwelling-house or place to be searched. 4. The complaint and warrant are insufficient as a trial process, because there is no accusation therein of any act of sale, or other crime, committed by the plaintiff, or by any one with his consent or permission. There is nothing to which the plaintiff could plead, or on which he could legally be tried. But if the process is sufficient for the purposes of a trial, it is insufficient as a search warrant. It does not contain " a special designation of the objects of search or seizure," and is not issued " with the formalities prescribed by the laws," as required by the Declaration of Rights, art. 14. A search warrant, that does not comply with every formal requisite, must be held insufficient. The warrant, being the only authority to justify the defendants' invasion of the plaintiff's close, is to be construed strictly, and should contain every necessary allegation to make it valid on its face. 5. It does not appear by the return on the warrant that the search was made in the day time, as required by law. Rev. Sts *c.* 142, § 3. 6. If the warrant is sufficient, the answer does not set forth in justification a compliance with the warrant; for the answer only says that the liquors taken " were found kept and deposited in the dwelling-house of the plaintiff,

and were therefore duly seized." It does not pretend that the liquors seized were intended for sale. Nor does that fact anywhere appear in the case.

III. But if the process were sufficient in form to justify the defendants, the provisions of law, under which it was instituted, are unconstitutional and void: 1. In taking private property for public uses, or destroying it, without reasonable compensation to the owner. Declaration of Rights, arts. 1, 10, 12. *St.* 1852, *c.* 322, §§ 14, 15. By Pitman, J. in *Greene* v. *Briggs*, 1 Curt. C. C. 337. 2. In directing search of dwelling-houses without " a special designation of the objects of search or seizure;" leaving it to the executive officer, who serves the warrant, to determine and adjudge what shall be taken. Declaration of Rights, art. 14. 3. In obliging the appellant to give bond, with sureties, " that he will not, during the pendency of such appeal, violate any of the provisions of this act," and providing that " in default of such bond he shall stand committed to abide the sentence of the court appealed to." *St.* 1852, *c.* 322, § 16. The right of trial by jury is thus embarrassed, and to some may be denied; contrary to the Declaration of Rights, art. 15. *Greene* v. *Briggs*, 1 Curt. C. C. 311, 326. 4. In providing that the person complained against shall be held to be guilty, unless he establish his innocence; and in compelling him to admit his guilt, unless he can prove either that the liquors are of foreign production, imported &c. " or are kept for sale under authority derived under this act, or are otherwise lawfully kept;" § 14; each of which facts may be incapable of proof by him, though innocent; contrary to the Declaration of Rights, art. 12.

*T. D. Eliot & R. C. Pitman*, for the defendants. I. A warrant regular on its face, issuing from a court having jurisdiction over the subject matter and the person, is a complete justification to the officer executing it, however irregular the preliminary proceedings may have been. *Donahoe* v. *Shed*, 8 Met. 328. *Wilmarth* v. *Burt*, 7 Met. 259. *Folger* v. *Hinckley*, 5 Cush. 266. *Upton* v. *Holden*, 5 Met. 360. *Sanford* v. *Nichols*, 13 Mass. 286. *Stetson* v. *Kempton*, 13 Mass. 282. *Colman* v. *Anderson*, 10 Mass. 105. *Albee* v. *Ward*, 8 Mass. 84. *Smith* v. *Bowker*,

1 Mass. 76. *Stoddard* v. *Tarbell*, 20 Verm. 324. *Humes* v. *Taber*, 1 R. I. 464. *Lewis* v. *Palmer*, 6 Wend. 369. *Savacool* v. *Boughton*, 5 Wend. 170. *Hunt* v. *Ballew*, 9 B. Monr. 390. 1 Walford on Parties, 314. Gwynne on Sheriffs, 525. Impey's Sheriff, 82. The validity of the process of a court, unless it appear on the face of it to be an absolute nullity, cannot be called in question collaterally, until it has been vacated or set aside by the court. *Blanchard* v. *Goss*, 2 N. H. 491, & cases cited. *Haskell* v. *Sumner*, 1 Pick. 459. *Hayden* v. *Shed*, 11 Mass. 500. It cannot even be called in question on appeal. *Commonwealth* v. *Henry*, 7 Cush. 512.

II. This warrant is at least valid on its face, and issued by a court of competent jurisdiction. All the requirements of the constitution and law were complied with. The warrant need not recite the fact that the oath necessary to search a dwelling-house had been taken. The papers show that it was taken, and that is enough. *Marsh* v. *Bancroft*, 1 Met. 497. *Ward* v. *Clapp*, 4 Met. 455. It is nowhere held that all the facts necessary for the officer's justification, must be recited in the warrant. If the proceedings have been correct in fact, the officer is protected. At common law, the warrant need not even recite the accusation. 1 Archb. Crim. Pl. (Waterman's ed.) 33, note. *Atchison* v. *Spencer*, 9 Wend. 62. The Rev. Sts. *c*. 135, § 2, only require the warrant to recite " the substance of the accusation." Even in New York, where the statutes require the warrant to recite the accusation, it has been held that a warrant need not contain the facts on which the charge is predicated. *People* v. *McLeod*, 1 Hill's (N. Y.) Rep. 377.

III. In the present case, the preliminary proceedings, as well as the warrant, were substantially in accordance with the law. To the objection that the oath for searching the dwelling-house does not state that the liquors were there kept for sale, the answer is that the same complainant had sworn to that fact in the body of the complaint, made at the same time and on the same paper. *Marsh* v. *Bancroft*, 1 Met. 497. *Commonwealth* v. *Dana*, 2 Met. 329, 336. *Farrar* v. *Parker*, 7 Met. 43. *Donahoe* v. *Shed*, 8 Met. 326. It is unnecessary to negative that the

sale was made before the law took effect. Besides; the offence is not the sale, but the having liquor with intent to sell; the sale is merely matter of evidence.

IV. The *St.* of 1852, *c.* 322, § 14, authorizing the issuing of such a warrant, is constitutional. This warrant, considered as a warrant *in rem*, contains a designation of the place to be searched, and a description of the articles to be seized, reasonably certain, and as specific as the circumstances of the case allowed. *Commonwealth* v. *Dana,* 2 Met. 329. *Sanford* v. *Nichols*, 13 Mass. 289. And considered as a warrant *in personam*, it contains a sufficient description of the offence. See, for provisions authorizing the issue of similar warrants, Rev. Sts. *c.* 50, § 19; *c.* 142, § 2; Sts. U. S. 1799, *c.* 22, § 68, 1 U. S. Sts. at Large, 677, 678; 1834, *c.* 161, § 20, 4 U. S. Sts. at Large, 732. There are many statutes of this commonwealth prohibiting the keeping of certain articles with intent to sell, or other unlawful intent, under penalty of forfeiture. See *Commonwealth* v. *Dana,* 2 Met. 329; *Commonwealth* v. *Lottery Tickets,* 5 Cush. 369; *St.* 1848, *c.* 315, § 1; Rev. Sts. *c.* 28; *c.* 29, § 9; *c.* 142, § 5. The police power of every government extends to the abating of every nuisance, or its cause, prejudicial to the health or morals of the community. By McLean, J. in *Thurlow* v. *Massachusetts,* 5 How. 589. *Preston* v. *Drew,* 33 Maine, 558. *Baker* v. *Boston,* 12 Pick. 184. *Commonwealth* v. *Tewksbury,* 11 Met. 55. Here is no taking of private property for public uses.

The plaintiff might, by appealing from the judgment of the justice, have obtained a jury trial. The decision in *Greene* v. *Briggs* does not apply to a case under the statute of Massachusetts; for in the complaint in that case the keeper of the liquors was described only as " a person to the complainants unknown;" 1 Curt. C. C. 315, 330; and the law of Rhode Island not only required the applicant, in order to obtain a jury trial, to give bond to pay all fines and costs that might be awarded against him, but also provided that, if the final decision should be against him, he should be adjudged a common seller of intoxicating liquors, which was an offence not charged in the complaint. 1 Curt. C. C. 325, 331. The plaintiff con-

tends that the statute of Massachusetts condemns the owner or keeper, unless he can prove himself innocent. It is true that the possession of the liquor, under the circumstances stated in § 14, establishes a *prima facie* case for the government, so far as to authorize the destruction of the liquors. But the statute, properly construed, requires the justice to be satisfied by the evidence of the guilt of the owner or keeper, before convicting him. [Thomas, J. The oath of the complainants, not having been made in the defendant's presence, cannot be evidence against him.] In proceedings under the bastardy act, (Rev. Sts. *c.* 49,) certain statements of the complainant, not made in the defendant's presence, are admissible in evidence against him. For instances of statutes imposing the burden of proof on the defendant in criminal prosecutions, see Rev. Sts. *c.* 28, § 90; *c.* 132, § 6; *Commonwealth* v. *Thurlow*, 24 Pick. 374; *St.* 1844, *c.* 102; 3 Greenl. Ev. § 171.

V. The defendants can in no event be held answerable for more than nominal damages, the liquors seized being kept in violation of law and put without its protection. *St.* 1852, *c.* 322, § 19. *Preston* v. *Drew*, 33 Maine, 558. *Sanford* v. *Nichols*, 13 Mass. 286. *De Gondouin* v. *Lewis*, 10 Ad. & El. 117. *Du Bost* v. *Beresford*, 2 Campb. 511. *Davis* v. *Nest*, 6 Car. & P. 167.

Moses Albro and William A. Anthony were summoned to appear before the police court of Fall River to answer to the complaint of three selectmen of Fall River, being legal voters therein, setting forth " that they have reason to believe and do believe, that on the ninth day of August in said year, at said Fall River, spirituous or intoxicating liquors were and still are kept and deposited in a warehouse [described] in said Fall River, occupied by Moses Albro and William A. Anthony, and intended for sale by them the said Albro and Anthony in said Fall River, the said Albro and Anthony not being authorized to sell the same in Fall River, under the provisions of the act entitled ' an act concerning the manufacture and sale of spirituous or intoxicating liquors,' or otherwise, according to law."

The remainder of the complaint and the warrant were similar in form to those in the margin of pages 3 – 5, *ante.* The defendants protested against being required to plead, but being required by the justice to plead, they severally pleaded not guilty; and upon a trial before the justice, Anthony was acquitted, and Albro was convicted. It was thereupon ordered by the justice " that said William A. Anthony be discharged; and that said Moses Albro pay a fine of twenty dollars, and costs of prosecution taxed at twenty one dollars and ninety one cents; and that said spirituous and intoxicating liquors be forfeited to be destroyed; and that, in default of payment of said fine and costs by said Albro, he be imprisoned in the common jail at Taunton or New Bedford in said county" of Bristol.

From this sentence Albro appealed to the court of common pleas for the same county, and in that court objected to being tried, on the ground that no issue was legally framed, because there was no complaint against him on which he could be tried, or which he could be required to answer. But *Byington,* J. overruled this objection, and ordered the trial to proceed. The complainants, being called as witnesses in support of the complaint, were asked, for the purpose of showing that Albro was not authorized to sell, whether they had licensed Albro to sell spirituous or intoxicating liquors in Fall River prior to this complaint. The defendant objected that it could not be proved in this way that he was not licensed, but the objection was overruled, and the witnesses testified that they had given him no license to sell. The Commonwealth offered no evidence to prove that the defendant was not licensed by the county commissioners to sell spirituous or intoxicating liquors, and the defendant insisted that he could not be convicted without such evidence. But the judge ruled that such evidence was not necessary to support the complaint. The defendant, being convicted, alleged exceptions.

This case was continued *nisi* from the last October term at Plymouth, and argued at Boston on the 18th of January 1854.

*C. J. Holmes & C. B. Goodrich,* for the defendant.

*R. Choate,* (Attorney General,) for the Commonwealth.

Herrick *v.* Smith.

Josiah Herrick, being imprisoned in the jail at Salem, in the county of Essex, on the 17th of February 1854 sued out a writ of *habeas corpus*, directed to the keeper of said jail, and returnable at this term; and by order of the court gave notice thereof to the attorney general, as required by the Rev. Sts. *c.* 111, § 20.

Gorham Smith, keeper of said jail, returned that he held said Herrick in custody, under and by virtue of a mittimus, issued by David Choate, Esquire, a justice of the peace for the county of Essex, which is copied in the margin.* The substance of the

---

* Commonwealth of Massachusetts. Essex, ss. To the sheriff of our county of Essex, his deputies, or any constable of the town of Gloucester, in said county, and to the keeper of the jail in Salem in our said county, greeting. Whereas upon a legal warrant issuing from David Choate, Esquire, a justice of the peace within and for the county of Essex, upon the complaint under oath of James W. Pattillo, Elbridge G. Friend and Joshua P. Trask, all of Gloucester in the county of Essex, legal voters in said town of Gloucester, that they have reason to believe and do believe that intoxicating liquors, to wit, rum, gin, brandy, whiskey, strong beer, ale, porter, wine, and other intoxicating liquors, the same not being cider used for other purposes than that of a beverage, or the fruit of the vine for the commemoration of the Lord's Supper, are kept, deposited and intended for sale, in a certain store and a cellar under the same, on the north side of Front Street in said Gloucester, by Josiah Herrick of said Gloucester, a person not authorized by law to sell the same, certain intoxicating liquors, to wit, about two and one half quarts of gin, about one and one fourth gallons of brandy, about one pint of rum, about one gallon and one pint of wine, and about one hundred and seven half pints of porter, were found in said store and cellar, and were seized; and the said Josiah Herrick was summoned to appear before the said justice of the peace, to answer to the said complaint; and it appeared to the said justice that said liquors, to wit, the gin, brandy, rum, wine and porter, above named, were intoxicating, and were so kept, deposited and intended for sale; and it is considered by the said justice that the said gin, brandy, rum, wine and porter, above named, be declared to be forfeited and to be destroyed.

And whereas the said Josiah Herrick of said Gloucester, defendant, now stands convicted before the undersigned, a justice of the peace within and for the county of Essex, of being a person not authorized by law to sell in the said town the said intoxicating liquors so ordered to be destroyed, and of being the owner and keeper of the said liquors, and of keeping, depositing and intending for sale, the said liquors, in said store and cellar in said town, on the fifth day of January in the year eighteen hundred and fifty four, for which offence he, the said Josiah Herrick, is by the said justice sentenced to pay twenty dollars for the use of said Commonwealth, and the costs of prosecution taxed at

complaint and of the subsequent proceedings is accurately stated in the mittimus. On the back of the complaint was a minute, signed by the justice, in these words; " Essex, ss. On this fifth day of January A. D. 1854, the following liquors, to wit, about two quarts and one pint of gin, about one gallon and one quart of brandy, about one pint of rum, about one gallon and one pint of wine, and one hundred and seven half pint bottles of porter, being brought before me, and the respondent failing to appear, although summoned by the officer, the within complaint was read. After full examination, it is considered by me that the said liquors are intoxicating, and were kept by the said respondent against law, and that they are forfeited; and that the said respondent is guilty. It is therefore ordered by me that said liquors be destroyed, and that said respondent pay a fine of twenty dollars, and costs of this prosecution taxed at twenty five dollars and thirty two cents, and in default thereof that he be committed to the jail in Salem in said county for thirty days."

*W. D. Northend,* for the petitioner. Section 14 of *St.* 1852, *c.* 322, is void, as unconstitutional, and against the first rights of persons and property. By that statute, upon the oath of three men that they have a certain belief, a justice of the peace may issue his warrant to seize the goods of a citizen, and the goods may be declared forfeited and destroyed, without any proof and without any trial. The provision, that the owner

twenty five dollars and thirty two cents, and to stand committed for thirty days in default of payment; all of which sentence he, the said Josiah Herrick, refuses to comply with.

We therefore command you, the said sheriff, deputies, and constables, and each of you, forthwith to take and convey the said defendant to the common jail in the county aforesaid, and to deliver him, said Josiah Herrick, to said keeper. And you, the said keeper, are hereby in like manner commanded to receive the said Josiah Herrick (whom we herewith send) into your custody in said jail, and him there safely to keep for thirty days, or until he shall comply with said sentence, or be otherwise discharged by due course of law.

Witness my hand and seal at Gloucester aforesaid, the seventh day of January in the year eighteen hundred and fifty four.

DAVID CHOATE, Justice of the Peace.

may appear and prove that he keeps the liquor, does not show that the statute contemplates a trial. A party is not to be held to prove himself innocent of a criminal charge; he is not bound to say any thing in defence, either of himself or of his property, until his guilt is established beyond a reasonable doubt by evidence on the part of the Commonwealth. But by this statute, the oath of three complainants, taken in the absence of the defendant, is conclusive evidence of his guilt, and of the unlawful keeping of his property, unless he prove the contrary. The legislature must be presumed to have meant that which it has expressed in the statute, and nothing more.

But the proceeding *in personam* is that which is more particularly drawn in question in this case. The petitioner has been fined and committed to prison, without having been present, or having any trial, without any legal evidence of his guilt and upon a process unauthorized by law. The statute contains no provision that any person shall be named in the warrant to seize the liquors. It provides that the owner or keeper of the liquors, if "known to the officer seizing the same," shall be summoned before the justice. This provision clearly imports that his name is not to be inserted in the warrant; and invests the seizing officer with a sort of judicial character. And if the owner or keeper fail to appear, or to prove that the liquors are lawfully kept, sentence may be passed against him in his absence. This section is therefore unconstitutional; because it does not require that any offence should be duly charged against the party; nor that he should be arraigned and plead; nor provide for any trial and proof; nor require that he should be present to receive his sentence. It is against all precedent, and contrary to the universal course and usage of the common law, that a man should be tried, even for the smallest misdemeanor, without having once appeared and been arraigned on the complaint or indictment. 4 Bl. Com. 318, 375. 1 Chit. Crim. Law, 337. 1 Stark. Crim. Pl. (2d ed.) 307. How can a party, who is not arraigned or brought into court, have his crime or offence "fully and plainly, substantially and formally, described to him," as required by art. 12 of the Declaration of Rights? In what form

must the summons be ?   The statute does not require anything more than a notice that some proceeding is pending against the party.   It need not state the charge specifically, nor require the party to be present.

" No subject shall be arrested, imprisoned, despoiled or deprived of his property," " but by the judgment of his peers or the law of the land."   Declaration of Rights, art. 12.   Statutes which deprive a citizen of rights of person or property, without a regular trial according to the course and usage of the common law, are not " the law of the land," in the sense of the constitution.   3 Story on Const. U. S. § 1783.   2 Kent Com. (6th ed.) 13. Here there is no provision for a trial according to the course of the common law ; but the statute expressly provides that he may be tried and sentenced in his absence.   If tried in his absence, he should be brought up to receive sentence.   1 Stark. Crim. Pl. 359.

The fact, that the party was named in the complaint and warrant in this case, can have no effect, as the statute does not require it.   The statute cannot be amended or improved by adopting a form of process which it does not require; nor can its defects be supplied by the court by intendment or construction.

*R. Choate,* (Attorney General,) for the Commonwealth.*   I might perhaps be argued that Herrick cannot be relieved on *habeas corpus,* and that his proper mode of relief, if wrongfully convicted, is by writ of error or *certiorari.   Riley's case,* 2 Pick. 172.   But it is preferred to put the case on the broad ground of the constitutionality of the law under which the proceedings were had.

*St.* 1852, *c.* 322, § 14, if analyzed, is found to do three things. I. It creates and defines an illegal or prohibited act, namely, the depositing or keeping of spirituous or intoxicating liquors, with intent to sell, by a person having no license therefor, the same not being in the original packages of importation, in

---

* This report embraces also the argument of the attorney general in the case of *Commonwealth* v. *Albro, ante,* 11.

smaller quantities than the laws of the United States allow. The constitution of the United States imposes no restraint upon such power, but leaves the matter with the state governments. *Commonwealth* v. *Kimball*, 24 Pick. 359. *Thurlow* v. *Massachusetts*, 5 How. 583, 589. *Smith* v. *Turner*, 7 How. 484. The constitution of Massachusetts imposes no such restraint; but on the contrary expressly authorizes the legislature " to make, ordain, and establish, all manner of wholesome and reasonable orders, laws, statutes and ordinances, directions and instructions, either with penalties or without." Const. of Mass. *c.* 1, § 1, art. 4.

II. The section in question declares the consequences of such illegal act, namely, the destruction of the liquors, and a fine on him who keeps or deposits them with intent to sell. And whether the act, being illegal, is to be deemed a crime, and the fine and forfeiture both parts of the punishment of the crime; or whether it is to be deemed an illegal act merely, not coming within the description of a crime, misdemeanor or offence; or whether the liquors are to be considered as a nuisance *de facto*, demanding to be abated and punished; in either view, the consequences annexed to the act by this section are not in violation of the constitution. So far as it affects the keeper who keeps with intent to sell, or the owner who deposits with intent to sell, the fine and forfeiture are both punishments for the illegal act. There is no doubt of the power to impose the fine, and he forfeiture of the liquors is nothing but a fine equalling in amount the value of the liquors. And the subsequent destruction of the articles does not alter the nature of the forfeiture. It is true that spirituous liquors are property, as much so as money or ships or land; but money or ships or land may come under the designation of nuisance, and lose every particle of their quality as property. There is no more unconstitutionality in attaching this forfeiture to this illegal act, than there is in the forfeiture of twenty dollars in money, or of the smuggler's ship, or of the felon's land.

The only constitutional provision that can touch this subject, is art. 26 of the Declaration of Rights, which provides that " no

magistrate or court of law shall demand excessive bail or sure-
ties, impose excessive fines, or inflict cruel or unusual punish-
ments." This article is taken from the English Bill of Rights,
and is in its terms a restraint on magistrates and courts only;
it only advises the legislature, and the discretion of the legis-
lature in the matter of a general law, passed for a beneficial
object, cannot, on this ground, be revised by the court.

The suggestion of Pitman, J. in 1 Curt. C. C. 337, that this
may be regarded as a taking of private property for public uses
without compensation, is purely fanciful. The broad terms, in
which the great principles of the Declaration of Rights are
expressed, may be made by an ingenious construction to em-
brace many things clearly not intended to be included. In a
certain sense, every fine paid into the state treasury is private
property taken for public uses. But it might as well be said
that the life of a murderer is taken for public uses. That is not
the object for which property is taken under this law; it is
wasted, or sacrificed, or destroyed, as unfit to be part of the
mass of property protected by the constitution. There is no
taking for public uses, but a putting away of it, as a nuisance,
out of the land. The case of *Russell* v. *New York*, 2 Denio,
461, where property was destroyed to prevent the spreading of
a conflagration, is a much stronger case than this. Again;
this provision of the statute is not merely punitive; but may
also be regarded as a legislative ordinance, that this kind of
property, under certain conditions specified, becomes and is a
nuisance, a means of and temptation to evil; and therefore,
when these conditions are judicially and properly ascertained,
to be destroyed. There is no distinction, as to the power of
the legislature in this respect, between this case, and the cases
of counterfeiters' tools, implements of gaming, lottery tickets,
obscene or incendiary pamphlets, bowie knives and pistols, or
goods on board a ship in a state of rapid decay, all which are
subjects of property, and entitled to protection as such, when
not held for purposes declared unlawful. The law destroys
all these for the public benefit, but on the principle that they
are not fit to be used for sale at all, and that they are kept

2 *

in violation of law, and are, under such conditions, an evil, and to be destroyed accordingly. When prohibited by law, they are no longer protected as property by the constitution. The tenth article of the Declaration of Rights, prohibiting the appropriation of the property of an individual to public uses, does not apply to this case, and is not to be made useless by an impracticable interpretation or application. If the court judicially see that it is a mere evasion for the purpose of filling the treasury, or for the purpose of individual oppression, they will set aside the statute as unconstitutional, but not otherwise. If by a general law, duly promulgated, operating on all men alike, springing from a moral purpose, aiming at a moral end, seeking, in the language of the constitution of Massachusetts, (c. 5, § 2,) " to countenance and inculcate the principles of industry and frugality, sincerity, good humor, and all social affections and generous sentiments among the people," spirituous liquors, under the circumstances contemplated by this statute, are declared a nuisance; and upon that fact being judicially ascertained, are adjudged to be forfeited and ordered to be destroyed; the constitution is not thereby violated. It is competent for the legislature, acting on a broad and general regard to the interests of the community, to declare and limit the uses to which property may be applied, and when it shall cease to be property. *Commonwealth* v. *Dana,* 2 Met. 329. *Baker* v. *Boston,* 12 Pick 184. *Commonwealth* v. *Tewksbury,* 11 Met. 58, 59. *Commonwealth* v. *Alger,* 7 Cush. 86. *Preston* v. *Drew,* 33 Maine, 560. *Vanderbilt* v. *Adams,* 7 Cow. 349. *Stuyvesant* v. *New York,* 7 Cow. 588.

III. The section then states the mode of proceeding by which these consequences are to be enforced. But it does this in the most general form; and therefore the court will, out of the constitution and the common law, supply any deficiency, correct what inadvertently may be illegal, and make the proceedings what they ought to have been made in terms, and thus uphold the constitutionality of the law, if possible. The power and duty of declaring a statute void, which is contrary to the constitution, undoubtedly exists in the court, but is to be exercised

only in clear cases. *Calder* v. *Bull*, 3 Dall. 395. *Fletcher* v. *Peck*, 6 Cranch, 128. *Ogden* v. *Saunders*, 12 Wheat. 270.

If a particular mode of proceeding will render the act consti‑ tutional, and another not, then unless upon a just view of the statute the court sees that the legislature meant to exclude a constitutional and proper mode, and substitute an unconstitu‑ tional and improper one, the court will so construe the act as to make it valid. Only so much of the statute is void as is con‑ trary to the constitution. *Commonwealth* v. *Kimball*, 24 Pick. 361. *Norris* v. *Boston*, 4 Met. 288. *Clark* v. *Ellis*, 2 Blackf. 10. And whatever may be said by Chitty or Blackstone, the statute, if not in violation of the constitution, is valid, and the discretion of the legislature cannot be revised by the court.

The section, properly construed, requires a complaint by three legal voters, stating that liquors are deposited or kept for sale at a place named, and by an offender designated; a preliminary examination by the magistrate; a summons to the owner or keeper, if known; and, if not known, then a certain form of notice deemed sufficient by the legislature; an examination, which is a legal trial; the forfeiture of the instrumentality of nuisance, and a moderate fine on the offender. And from this sentence he may appeal, and have a trial by jury according to law. The section contemplates two somewhat distinct modes of proceeding, *in personam*, and *in rem*.

1. Considered as a proceeding *in personam*, it is strictly a criminal proceeding, and must therefore comply with the rules of law applicable to criminal proceedings. The complaint must state the name of the offender, if known; and if not known, that fact should be stated. The oath required, that the com‑ plainants "have reason to believe and do believe," is all that can be required of any complainant as to a matter of which he was not an eye witness. This is not merely an oath that the complainants suspect, as in *Commonwealth* v. *Lottery Tickets*, 5 Cush. 369, and *Commonwealth* v. *Phillips*, 16 Pick. 211. Besides; the defendant does not plead to the oath of the com‑ plainants, but to the direct charge of keeping with intent to sell.

The statute clearly contemplates a trial in due form before

the liquors are destroyed. The liquors seized are to be kept by the officer "until final action shall be had thereon." § 14. And by § 15, where the owner or keeper is unknown, the liquors are not to be destroyed, if they are proved to have been lawfully kept. The legislature have the power to declare what shall be *prima facie* evidence of a crime, and to change the burden of proof. It is not contrary to the Declaration of Rights that the defendant should be summoned instead of being arrested.

The right of appeal from the sentence of the justice is unembarrassed, and regulated in a manner heretofore used and practised in this Commonwealth. *St.* 1852, *c.* 322, §§ 9, 16. A person, appealing from the judgment of a justice of the peace in a criminal case, has always been required to give bond with sureties to prosecute his appeal, &c. Rev. Sts. *c.* 138, § 1. *St.* 1783, *c.* 51, § 3. And the right of trial by jury is not impaired. It is enough that a trial by jury may be had at a subsequent stage of proceedings. *Emerick* v. *Harris,* 1 Binn. 416. *Biddle* v. *Commonwealth,* 13 S. & R. 410. *Keddie* v. *Moore,* 2 Murph. 41. *Wilson* v. *Simonton,* 1 Hawks, 482. *Beers* v. *Beers,* 4 Conn. 535. *Hazen* v. *Essex Co.* Essex, November term 1853. The statute of Massachusetts is not open to the objections on which the statute of Rhode Island was declared unconstitutional in *Greene* v. *Briggs,* 1 Curt. C. C. 311.

2. Considered as a proceeding *in rem,* there is no constitutional difficulty, when the keeper and owner are known; for the statute in such case provides for a complaint charging the keeping and depositing with unlawful intent, and secures ample notice, and opportunity to plead and appeal. And in such cases the warrant, being issued on oath, naming the person, designating the place, and ascertaining the owner if known, conforms to the Declaration of Rights, art. 14, and to the Constitution of the United States, Amendments, art. 4. See authorities cited for the defendants in *Fisher* v. *McGirr, ante,* 9. The only case of any difficulty is where the owner is unknown. And even in such case the owner has entrusted his liquors for sale to an agent, and the agent is keeping them with unlawful intent to sell, thus making them in point of fact a nuisance under the

statute; and the statute seeks only to abate that nuisance. A ship, used by the master for smuggling or other unlawful purposes, though without the knowledge of the owner, may be seized by the admiralty and forfeited. In any such case, he who enables his property to be used in a manner injurious to society is to suffer, rather than the public. So far as the proceeding is *in rem,* it is only *quasi* criminal, and it is not necessary that the owner should be summoned. If the court sees that the legislature has undertaken *bona fide* to secure reasonable notice to the owner, that is enough. The section requires notice to be given to the agent in all cases, and that is of itself sufficient; and there is a further provision for notice by posting. The proceedings *in rem* under § 14 are conformable to the course of legislation in this commonwealth. Rev. Sts. *c.* 28, §§ 30, 59, 62, 88, 117, 138, 176, 187 ; *c.* 142, §§ 2, 5; *c.* 118, §§ 20 *& seq. St.* 1793, *c.* 43. *St.* 1833, *c.* 151. *Barnacoat* v. *Gunpowder,* 1 Met. 225.

Lastly, the statute, if it does not expressly require, does not forbid, the insertion of the averments, and the observance of the precautions, required by the constitution. And as none of them were in fact omitted in this case, nor in that of Albro, the proceedings in these two cases are valid.

SHAW, C. J. Many exceptions were taken in these cases to the course of proceedings under the statute of 1852, *c.* 322, concerning the manufacture and sale of spirituous or intoxicating liquors; but the one which surpasses all others in importance, and which, if well taken, supersedes all others, is, that all that part of that statute, directing the seizure and confiscation of liquors kept or deposited for sale, is unconstitutional and void. We suppose the principle is now well understood, that where a statute has been passed by the legislature, under all the forms and sanctions requisite to the making of laws, some part of which is not within the competency of legislative power, or is repugnant to any provision of the constitution, such part thereof will be adjudged void and of no avail, whilst all other parts of the act, not obnoxious to the same objection, will be held valid and have the force of law. There is nothing inconsistent, there-

fore, in declaring one part of the same statute valid and another part void.

Many questions have heretofore arisen upon various points on the construction of this statute ; but the action brought by Fisher against McGirr and others is the first case wherein any question has come up in this court upon the constitutionality of the fourteenth section of the act, being the one under which these proceedings were had. As it was a question of much general interest and importance, the court reserved the case, especially as they understood that the same question was pending in other counties, and would probably soon be argued. Other cases have since been brought up and argued.

Passing over, for the present, all the minor exceptions to the regularity of these proceedings, we are brought to consider what are the true construction and legal effect of this section, and then whether its provisions, correctly construed, are contrary to the Declaration of Rights and the constitution of this Commonwealth, either in their principle, or in the mode in which they are to be carried into execution. The section is long and complicated, and it is not easy, in every instance, to ascertain what was intended.

It is nowhere provided in this section, or in any other part of the statute, in direct terms, that keeping, or having liquor deposited, for sale, shall be in itself unlawful, and render the property liable to confiscation, or subject the owner, agent or other depositary to a penalty therefor. It rather results by implication from other provisions, and the general tenor of this section. The first part of this section directs, that " if any three persons, voters in the town or city where the complaint shall be made, shall, before any justice of the peace, or judge of any police court, make complaint, under oath or affirmation, that they have reason to believe, and do believe, that spirituous or intoxicating liquors are kept or deposited and intended for sale, by any person not authorized," &c. " in any store, shop, warehouse, or in any steamboat or other vessel, or in any vehicle of any kind, or in any building or place, in said city or town, said justice or judge shall issue his warrant of search, to any sheriff,"

&c. " who shall proceed to search the premises described in such warrant." Several suggestions arise upon this passage. The complaint is not required to allege, that any person in particular has the articles kept or deposited, nor whose intention to sell them it is, which renders the keeping unlawful, and subjects the property to seizure and confiscation. We presume, from the context and the purpose of the enactment, that it must be the intention of the owner, or his agent, servant, or some person having it in his power to make a sale *de facto,* and thereby to make the mischievous use of it, which is intended to be prohibited.

Again; by the collocation of the terms in this sentence, it is a little doubtful whether the words " in said city or town " designate the place within which the liquors are kept; or qualify the intent to sell them, within such city or town, in order to make the keeping of them unlawful. Perhaps both are intended. The former would seem to be intended to bring them within the jurisdiction of the local magistrates and officers; and unless so kept, with an intent that said liquors should be sold within such city or town, it would make the keeping of liquors unlawful, although intended for sale in another state or foreign country, which we suppose the legislature could not have intended. It is to be regretted that in so important a provision the language should not have been more explicit and free from doubt.

It is obvious, we think, that the complainants are not required, and have no express authority, by the act, to state the name of the person by whom the liquors are kept; and as the warrant follows the complaint, the justice is not required, by the statute, to name such person; and if practically the name is usually mentioned, it is probably done as one mode of identifying or describing the place where the liquors are alleged to be kept, as the house or shop of A. B. in —— street, &c.

The section goes on — " and if any spirituous or intoxicating liquors are found therein, [the premises described,] he [the officer] shall seize the same, and convey them to some proper place of security, where he shall keep them until final action shall

be had thereon; and such liquors so seized, together with the · implements of the traffic, may be used in evidence against any person charged with the unlawful manufacture or sale of spirituous or intoxicating liquors."

From this last clause, we might be led to imply that if such liquors were found, it was intended that a new and substantive complaint should be filed, upon the trial of which they should be evidence. But, by the terms of the statute, they are not to be used as evidence of an unlawful keeping with intent to sell, but as evidence upon a charge of actual unlawful manufacture or sale. The statute does not, therefore, by implication direct or provide for a new complaint for an unlawful keeping with intent to sell.

Again; in the same passage, when the complainants have · stated their belief that liquors intended for sale are kept in a place designated, and a warrant is issued to an officer to search such place, the law requires — and we presume the warrant would necessarily follow it — not that he shall seize certain liquors described, or in more general terms, any liquors so kept or deposited for sale, but that "if any spirituous or intoxicating liquors are found therein, he shall seize the same." The intent of the legislature seems to have been, that all spirituous liquors, found in such place, shall be taken into the custody of the law, leaving the question whether any or all of them were kept for sale, or lawfully kept, to be decided afterwards.

The section contains a provision for a more special complaint, to warrant the search of a dwelling-house; and then goes on to direct the proceedings. " The owner or keeper of said liquors, seized as aforesaid, if he shall be known to the officer seizing the same, shall be summoned forthwith before the justice or judge by whose warrant the liquors were seized ; and if he fail to appear, or unless he shall prove that said liquors are imported," &c. " or are kept for sale by authority derived under this act, or are otherwise lawfully kept, they shall be declared forfeited, and shall be destroyed ; " " and the owner or keeper of said liquors shall pay a fine of twenty dollars and costs, or stand committed for thirty days, in default of payment, if in

the opinion of said court said liquors shall have been kept or deposited for sale, contrary to the provisions of this act."

It may be remarked upon this part of the act, that the first time any mention is made of the owner or keeper, is upon the seizure of the liquors; then, upon the contingency that he is known to the officer, he is to be summoned, and if he fail to appear, or unless he can make certain proofs, the liquors are to be destroyed, and he is to be punished. The purpose for which he is summoned seems to be, to inform him of the seizure of the goods, and enable him to prove them not liable to forfeiture.

Section 15 provides that "if the owner, keeper or possessor of liquors, seized under the provisions of this act, shall be unknown to the officer seizing the same, they shall not be condemned and destroyed, until they shall have been advertised, with the number and description of the packages, as near as may be, for two weeks, by posting up a written description of the same in some public place, that if such liquors are actually the property of any city or town," &c. " or the property of some person duly authorized to manufacture and sell such liquors under this act, and were lawfully in his possession at the time of such seizure, or were otherwise lawfully kept, they may not be destroyed." The notice is in effect not to any person in particular, nor to any person in whose possession the liquors were found; but the purpose of the notice, as declared by the act, is that " upon satisfactory proof of such ownership or lawful possession within said two weeks," the justice may make an order to deliver them up. The purpose of the notice seems to be to enable any person to appear and offer such proof, who may have any interest in obtaining a discharge of the property, upon any of the grounds aforesaid.

Section 16 directs what proceedings shall be had, in case an owner or keeper of liquors, seized as aforesaid, shall appeal.

These are all the provisions of the act, on the subject of the seizure of spirituous liquors, kept for sale; they together constitute a system of proceedings, and it seemed necessary to consider this system as a whole, in order to a better understanding of its legal and constitutional character.

We think it manifest that the legislature, in this system of measures, proposes to accomplish one and the same object, by two distinct modes of proceeding. The general purpose is to prevent or diminish the evils of intemperance, by the punishment of an indiscriminate sale of spirituous liquors; but the particular purpose in this series of measures is, to prevent such liquors from being kept in any place, by any person, for the purpose or with the intent that they shall be sold. Although crimes and offences, punishable by law, consist in acts done, and not in mere unexecuted purposes and intentions, yet the more effectually to accomplish the great and salutary purpose of laws necessary to the wellbeing of society, acts and conduct, which would be innocent or indifferent in themselves, are often declared unlawful, and made punishable, if done with an intent and purpose, which will render them noxious or dangerous, and where, should the law wait till the criminal intent is carried out into action, irremediable mischief will be done. The law is preventive, as well as remedial. Thus a person may innocently have in his possession counterfeit coin or bank notes. But if he has them in his possession with intent to pass them as true, knowing them to be counterfeit, the intention qualifies the act, and such act may be justly made punishable. This is the foundation of many criminal enactments. The · principle is too familiar, to require extended illustration.

Supposing the object to be a legitimate one — to prevent and punish the possession of intoxicating liquors, which leads to temptation, and facilitates the actual commission of the offence of unlawfully selling, by declaring that possession unlawful, **if** held with an intent and purpose of selling unlawfully — we have said, that this system of measures seems designed to accomplish this one purpose by two distinct modes or courses of proceeding, both well known to the law, but of considerable difference in their modes of operation; the one, a proceeding *in rem*, by the sequestration and forfeiture of the property or thing, which is noxious in itself, or made the instrument or subject of a noxious and injurious use: the other, a proceeding *in personam*, for the punishment of the person of the offender, as an exam-

ple to deter others from the commission of the like offence. Both are proceedings designed for the enforcement of the criminal law, and must be governed by the rules applicable to its administration.

We have no doubt that it is competent for the legislature to declare the possession of certain articles of property, either absolutely, or when held in particular places, and under particular circumstances, to be unlawful, because they would be injurious, dangerous or noxious; and by due process of law, by proceedings *in rem*, to provide both for the abatement of the nuisance and the punishment of the offender, by the seizure and confiscation of the property, by the removal, sale, or destruction of the noxious articles. Putrefying merchandise may be stored in a warehouse, where, if it remain, it would spread contagious disease and death through a community. Gunpowder, an article quite harmless in a magazine, may be kept in a warehouse always exposed to fire, especially in the night; however secreted, a fire in the building would be sure to find it, and the lives and limbs of courageous and public spirited firemen and citizens, engaged in subduing the flames, would be endangered by a sudden and terrible explosion. It is of the highest importance, that such persons should receive the amplest encouragement to their duty, by giving them the strongest assurance that the law can give them, that they shall not be exposed to such danger. This can be done only by a rigorous law against so keeping gunpowder, to be rigorously enforced by seizure, removal, and forfeiture.

The cases of goods smuggled, in violation of the revenue laws, and the confiscation of vessels, boats and other vehicles, subservient to such unlawful acts, are instances of the application of law to proceedings *in rem*.

The theory of this branch of the law seems to be this: That the property, of which injurious or dangerous use is made, shall be seized and confiscated, because either it is so unlawfully used by the owner or person having the power of disposal, or by some person with whom he has placed and entrusted it, or at least, that he has so carelessly and negligently used his power

and control over it, that by his default, it has fallen into the hands of those who have made, and intend to make, the injurious or dangerous use of it, of which the public have a right to complain, and from which they ·have a right to be relieved. Therefore, as well to abate the nuisance, as to punish the offending or careless owner, the property may be justly declared forfeited, and either sold for the public benefit or destroyed, as the circumstances of the case may require, and the wisdom of the legislature direct. Besides; the actual seizure of the property, intended to be offensively used, may be effected, when it would not be practicable to detect and punish the offender personally.

Supposing then that it is competent for the legislature, as one of the means of carrying into effect a law to prohibit the unlawful sale of intoxicating liquors, to declare the keeping of such liquors for the purpose of sale, in any place, within any city or town of the Commonwealth, unlawful, and to declare the liquors, thus kept, liable to seizure and forfeiture as *quasi* a nuisance, under a proper and well guarded system of regulations; the question is, whether the measures, directed and authorized by the statute in question, are so far inconsistent with the principles of justice, and the established maxims of jurisprudence, intended for the security of public and private rights, and so repugnant to the provisions of the Declaration of Rights and constitution of the Commonwealth, that it was not within the power of the legislature to give them the force of law, and that they must therefore be held unconstitutional and void; and the court are all of opinion that they are.

The court are not insensible to the great weight of responsibility devolving on them, when they are called to perform the delicate but important duty of deliberating on the validity and constitutionality of an act of the legislature; and they would approach it with all the solicitude which its importance demands.

· I. The measures directed by § 14 of this act are in violation of the fourteenth article of the Declaration of Rights. That article declares that " every subject has a right to be secure

from all unreasonable searches and seizures of his person, his houses, his papers, and all his possessions. All warrants, there·fore, are contrary to this right, if the foundation of them be not previously supported by oath or affirmation; and if the order in the warrant to a civil officer, to make search in suspected places, or to arrest one or more suspected persons, or to seize their property, be not accompanied with a special designation of the persons or objects of search, arrest, or seizure." The subject of general warrants, and of illegal searches and seizures under them, had been much discussed in England before the adoption of our constitution, and was probably well understood by its framers. *Entick* v. *Carrington,* 2 Wils. 275. This case is much more fully reported, and the judgment of Lord Camden given at length, in 19 Howell's State Trials, 1029. The measures authorized and directed by this act, are in violation of the principle and spirit of the article respecting general warrants and unreasonable searches.

1. Because the act does not require the three persons, who are to make complaint, to state that they have reason to believe and do believe that intoxicating liquors are kept or deposited and intended for sale by any person named; nor does it require the magistrate to state, in his warrant to the searching officer, the name of any person believed to be the owner or keeper of such liquors, nor the name of any person having the custody or possession thereof, nor the name of any person having the intention to sell the same. On the contrary, the complaint affects the place only, and the belief of the complainants that liquors are kept in such place, and are intended for sale. In this respect the warrant is general, not affecting any person, even by way of belief or suspicion, of the unlawful act of keeping such liquors for sale.

2. It does not limit the officer's authority and right of seizure to the articles described, by quantity, quality or marks; nor does it even restrict the officer's power of seizure to liquors kept and intended to be sold, although it is the avowed purpose of the act to make the keeping of such liquors unlawful, and subject them to forfeiture. But even were it to provide that

3 *

the search and seizure should be confined to liquors intended
for sale, it would be open to another objection, perhaps quite
as formidable, which is, that it would leave it to the mere dis-
cretion of an executive officer to judge and decide what were
so intended for sale and what were not, leaving it to him to·
decide what to take and what to leave, and making his
decision conclusive. We say conclusive, for if the seizing
officer does not take them, the magistrate acquires no juris-
diction over them, and no other tribunal or magistrate can
entertain the question whether they were intended for sale and
so liable to forfeiture, or not. No liquors therefore could be
adjudged forfeited under this section, unless the searching
officer should take and return them as in his belief intended
for sale.

3. Again; if the three persons state their belief that any
spirituous liquors are kept or deposited and intended for sale,
in any store, shop or warehouse, or in any steamboat or other
vessel, or in any vehicle, or in any building or place, then the
warrant shall issue, and the sheriff or constable shall proceed
to search the premises — that is, the store, vessel or place
described — and if any spirituous liquors are found therein, he
shall seize the same. Under this express power and direction,
if a few kegs, demijohns or bottles of liquor are placed in a
warehouse, or on board a ship or steamer, by some person
intending to sell them, or under such circumstances that three
respectable persons can safely testify that they believe that they
are so intended for sale, then the officer shall seize and remove
the whole stock of the warehouse, or the whole cargo of the
ship or steamboat, so far as it may consist of wine, spirits, or
intoxicating liquors. This makes it the imperative and indis-
pensable duty of the officer, to seize all the liquors found, how-
ever clearly it may appear to him that the larger quantity is
about to be sent to other states, or to a foreign country, and not
intended for sale in the city or town where the liquors are found,
or even in the Commonwealth. This would be equally the
officer's duty, whether the liquors should be found in kegs, or
in larger packages, a· pipes or hogsheads. Thus the authority

to seize is carried greatly beyond the articles, the possession of which is made unlawful, and the keeping of which is intended to be treated by the act as a nuisance; to wit, spirits kept and intended for sale.

It appears to us, therefore, that this act in terms warrants and requires unreasonable searches and seizures, and is therefore contrary to the constitution.

If it be said that the act provides for as much certainty in the description of the articles to be, searched for and seized, and in the definition and limitation of the officer's power, as the nature of the case will admit of; that the complainants cannot know with certainty, before search is made, that spirits are deposited in the place described, or are intended for sale, and can only state their belief; and that neither the complainants nor the magistrate can know, before search, who is the owner, or has the custody, or intends to sell, and therefore cannot name him; and that it is impossible for the complainants or for the searching officer to distinguish what part of the liquors found is intended for sale, and that that must be a subject of inquiry before the magistrate afterwards; the answer seems to us to be obvious, that if these modes of accomplishing a laudable purpose, and of carrying into effect a good and wholesome law, cannot be pursued without a violation of the constitution, they cannot be pursued at all, and other means must be devised, not open to such objection.

4. Another ground is, that if, upon a complaint that some liquors are kept in a warehouse, or on board a vessel, believed to be intended for sale, a warrant shall go, and the officer is obliged to seize all the liquors found in the same store or vessel — and such is the plain direction of the statute — then the officer must seize such liquors, though imported and remaining in the original packages, (a cargo of wine and brandy, for instance,) and bring them before the magistrate. This would be an interference with the regulation of foreign commerce placed under the exclusive jurisdiction of the constitution and laws of the United States. And though there is a provision in this act, that the owner of such imported liquors may go before

the magistrate and obtain their release by proof of the facts, yet such seizure and detention, perhaps for a long period, would be in danger of bringing this power into conflict with the laws of the United States, which, within their proper sphere, are the supreme law of the land.

II. Another ground, upon which we are of opinion that this section of the act is unconstitutional, is, that in the commencement and course of proceedings, required and directed by the series of measures provided for in the act, many of the precautions and safeguards for the security of persons and property, and the most valuable rights of the subject, so sedulously required and insisted on in the laws of all well ordered governments, and specially prescribed as the governing rule of the legislature in our Declaration of Rights, are overlooked and disregarded.

The Declaration of Rights declares, article 1, "All men have certain natural, essential, and unalienable rights," among others, " that of acquiring, possessing, and protecting property." Art. 10. " Each individual has a right to be protected in the enjoyment of his property, according to standing laws." Art. 11. " Every subject ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which he may receive in his person, property or character. He ought to obtain right and justice freely, and without being obliged to purchase it; completely, and without any denial; promptly and without delay; conformably to the laws." Art. 12. " No subject shall be held to answer for any crime or offence, until the same is fully and plainly, substantially and formally, described to him; or be compelled to accuse, or furnish evidence against himself; and every subject shall have a right to produce all proofs that may be favorable to him; to meet the witnesses against him face to face, and to be fully heard in his defence by himself, or his counsel at his election; and no subject shall be arrested, imprisoned, despoiled or deprived of his property, immunities or privileges, put out of the protection of the law, exiled, or deprived of his life, liberty or estate; but by the judgment of his peers, or the law of the land."

These are homely and familiar maxims, scarcely requiring citation, and yet the Declaration of Rights itself (art. 18) admonishes us that a frequent recurrence to them is absolutely necessary to preserve the advantages of liberty, and maintain a free government; and that the people have a right to require of their lawgivers and magistrates an exact and constant observance of them.

In comparing the section in question with these injunctions of the Declaration of Rights, the first thing to be remarked is, that it vests extraordinary and unusual powers in justices of the peace, not merely as to the taking of preliminary measures, such as receiving and verifying complaints, issuing warrants of search and arrest, and the like; but also invests them with jurisdiction to adjudicate upon an unlimited amount of property.

There can be no doubt that spirituous liquors, at least before they are judicially and finally confiscated and ordered to be destroyed, are property; this act so recognizes them..

1. Then recurring to the course of proceeding under this statute, the first step required is the complaint of three persons, *ex parte;* and no provision is made that in any stage of the proceeding these complainants are to be again examined, nor that the party whose property is taken shall have opportunity to meet them face to face; yet, as we shall see, their oath to their belief of a certain fact is the only evidence, upon which the property may be adjudged forfeited.

There is no provision or direction that the name of any person may be inserted in the complaint or in the warrant; and if the complainants or the magistrate do name a person in the warrant as an owner, or one having possession, it is no direction or authority to the officer to summon such person, either to defend the property, or answer to any complaint. The direction in the statute is, that the sheriff or constable shall search the premises described in the warrant, and if any spirituous liquors are found therein, he shall seize the same, " and the owner or keeper of said liquors seized as aforesaid, if he shall be known to the officer seizing the same, shall be summoned

forthwith before the justice or judge by whose warrant the liquors were seized;" and if he fail to appear, or unless he can prove that they are lawfully kept, they shall be declared forfeited, and shall be destroyed. It depends on the contingency of the owner or keeper being known to the officer, be he named in the warrant as such or not, whether anybody is summoned or has notice. If the officer returns the name of some person as owner or keeper, and such person does not forthwith appear, then the liquor may be adjudged forfeited, without further notice or proof. The officer, who of course must act upon hearsay and the best information he can obtain, however honestly he may endeavor to ascertain the truth, may be mistaken in his return of the name of a person as owner or keeper; then the property may be confiscated and destroyed without any opportunity given the true owner to appear and defend.

2. But suppose the officer happens to be right, and the owner has notice, the notice is to appear forthwith. No day in court is given, no allowance made for the contingency of the owner's absence, or sickness, or engagements. No provision is made that personal notice shall be given, or that proceedings shall be postponed until personal notice be given. A summons at the owner's last usual place of abode would be good service, where not otherwise specially directed. Upon such constructive notice, which may not reach the owner personally, and which from its shortness is very likely not to reach him until after the confiscation and destruction of the property, if he fail to appear forthwith, the property may be declared forfeited, and the party, whose name is thus returned as owner or keeper, may have judgment against him personally for a penalty and costs.

These measures seem wholly inconsistent with the right of defending one's property, and of finding a safe remedy in the laws.

3. But if the owner or keeper shall be unknown to the officer seizing the liquor, they shall not be condemned and destroyed until they shall have been advertised, with the number, &c. for two weeks, by posting up a written description in some public place, that if such liquors are actually the property of any city

or town, purchased for sale by the agent for medicinal, mechani-cal or chemical purposes only, or of some person duly author-ized, or are otherwise lawfully kept, they may not be destroyed; but upon satisfactory proof of such ownership within said two weeks before the justice or judge, he shall deliver to the agent, &c. an order to the officer to deliver them up. Whether such a written advertisement posted in one place is adequate public notice, it is for the legislature to decide. The manifest objection to this notice is, that it fixes no time or place at which a claimant may appear with his evidence, and have a trial, and meet the witnesses face to face. It presupposes that he is to appear and offer his proofs, at any time, when the magistrate may be found, and is ready and willing to hear him, and receive and consider his proofs. It looks to no trial, but assumes that the liquors are to be condemned, unless a claimant can make such proof.

The theory, upon which a judgment *in rem* is regarded as a judgment binding upon all the world, is that all the world have constructive notice of the seizure, with the cause and purpose of the taking, and the time and place at which any person may appear before a competent tribunal and have a trial, before the condemnation of his property.

Supposing the process *in rem*, when rightly conducted, to be a suitable and proper mode of enforcing obedience to a useful and salutary law, it does it by punishing the offender, who must be the owner, or some person intrusted with the posses sion by him, or some person for whose unlawful possession of it the owner is responsible; it does this by depriving such owner of his property, at the same time preventing the further noxious and unlawful use of it. Such being the character of the prosecution, in a high degree penal in its operation and consequences; it should be surrounded with all the safegards necessary to the security of the innocent, having the full benefit of the maxim, that every person shall be presumed innocent until his guilt be established by proof. He should have notice of the charge of guilty purpose, upon which his property is declared to be unlawfully held, and in danger of being forfeited,

a time and opportunity to prepare his defence, an opportunity to meet the witnesses against him face to face, and the benefit of the legal presumption of innocence.

4. But there is another objection to the constitutionality of this law, of a more formidable character, and as it appears to us, quite decisive of the case. Supposing the owner of the liquor to have full notice, to have appeared before the magistrate, and to have had full opportunity to procure evidence and prepare for trial; no provision is made by the statute for a trial, for a determination by judicial proofs of the facts, upon the truth of which alone the property can be justly confiscated and destroyed. On the contrary, the statute expressly directs, that if the owner fail to appear, or (that is, if he does appear,) unless he shall prove that the liquors were lawfully kept, they shall be declared forfeited, and the owner shall be adjudged to pay a fine and costs. There is no room for implication; the judgment shall pass for the forfeiture and fine, unless the owner can prove that they were lawfully kept. This is the most favorable provision made for him. The judgment, then, passes without trial and without proof, unless that which preceded the seizure, and the seizure itself, are to be considered as legal proof.

To see whether any trial is provided for, we must first ask what is to be tried. The case supposes, that the keeping of spirituous liquors, intended for sale, is made unlawful by the statute itself; that the illegality consists in the intent of selling; that the intent qualifies the act of keeping, and impresses on the property illegally kept the character of a nuisance, which makes it lawful to seize the property thus made the instrument of an illegal purpose, and confiscate and destroy it. This is done, as well to remove and abate the nuisance, and prevent the illegal use of it, as to punish the owner, upon whom ultimately the loss must fall, by a deprivation of property, in the nature of a penalty. What then is the fact upon which any adjudication must proceed? Clearly, keeping with an intent to sell. As keeping, without such intent, would not be illegal, the whole criminality of the act, as well that which affects the owner or keeper personally, as that which stamps the character

of illegality upon the property, is the intent to sell it. This intent must be that of the owner, or of his agent, servant or bailee, having acquired through him the possession and the actual power to sell it. The intent of a mere stranger, having no possession or control over it, could not bring it within the act and render the possession unlawful. The fact then to be proved, the main, the indispensable fact, in order to render the keeping illegal, and without which there is no legal ground for a penal judgment, is the intent of the owner, or other person in possession of the property, to sell it in violation of the law. Now we can perceive no provision for the trial and proof of this offence of keeping liquors with illegal intent, in any sense in which a judicial trial is understood, in which a party charged with an offence, for which his property may be taken from him and confiscated, may stand on his defence, and have the presumption of innocence, until proofs are adduced against him to establish the crime or misdemeanor with which he is charged. Such a trial alone can satisfy the express provision in the Declaration of Rights, art. 12, which declares that no subject shall be arrested, or deprived of his property, immunities or privileges, or of his life, liberty or estate, but by the judgment of his peers, or the law of the land. These expressions have been understood, from Magna Charta to the present time, to mean a trial by jury, in a regular course of legal and judicial proceedings.

In order to ascertain whether provision is made for such a trial, we must look to the statute, and see upon what grounds a judgment of forfeiture shall be had. The warrant is issued; the goods, including all liquors found at the place designated, are seized and detained by the officer, subject to the order of the justice; and the owner or keeper is summoned. What is then to be done? The statute answers: If he fail to appear, or unless he can prove that the said liquors are of foreign production, imported, &c. contained in the original packages, and in quantities not less than the laws of the United States prescribe; or are kept for sale by authority derived under this act, (that is, by an agent of the city or town,) or otherwise lawfully

Fisher *v.* McGirr & others.

kept; they shall be declared forfeited. The most favorable privilege offered to the owner is that he may prove, if· he can, that the liquor was lawfully kept. If he offers no proof, or fails to satisfy the magistrate, then they are to be declared forfeited. But upon what proof? The act seems to presuppose that a *prima facie* case of unlawful keeping has been established, upon which, unless rebutted, a judgment may pass; but again we ask, upon what preceding evidence has any *prima facie* case been proved? The oath of the original complainants could be no proof, for many reasons: It was *ex parte*, and made for another purpose, to wit, to obtain a warrant; it states their belief that some liquors were kept in the store, vessel or place described, and upon this all the liquors there found, as well as those to which the oath may have been intended to apply, as all others, were seized, brought under the control of the magistrate, and now stand before him for their deliverance, which must depend upon his adjudication. But such a complaint, if it could be held to apply to all. the goods seized, could on no principle be regarded as evidence on a trial. If the complainants, respectable as they are required to be, were to be regarded as witnesses, their preliminary examination is *ex parte;* they are not required to appear before the magistrate afterwards, and after some person has been summoned; and the accused has no opportunity to meet them face to face. An indictment is far more precise and explicit, charging all the particulars of an offence with technical accuracy, and is found on the oath of at least twelve men, upon evidence given on oath. As well therefore might a statute provide, that upon an indictment being read, the party charged ·should be convicted, unless he could prove that he was not guilty. Yet, up to the time of the appearance of the respondent before the magistrate, such preliminary complaint is the only semblance of evidence of any criminal intent, to render the owner or keeper liable, either to the forfeiture of the property, or to a judgment for a penalty. The fact, that the liquor was found in the custody of the respondent when seized, is no evidence of unlawful intent to sell. The place, time and circumstances, and the mode in

which it is kept, if proved by witnesses, might be evidence of such intent. But no such testimony is required; and what we mean to say is, that the finding of the liquor, the fact of seizure, and the custody by the officer, afford no evidence of that intent, which makes the property liable to forfeiture, and subjects the keeper to a penalty.

These considerations apply to the property of those intended by the complainants to be charged as the guilty owners or keepers; but who, before judgment of forfeiture, are entitled to a fair trial. But they apply with greatly increased force to those, not even believed by the complainants to be guilty owners or keepers, but whose liquors in the same warehouse or vessel, are swept by the statute and the proceedings under it into the same net, and are in danger of the same condemnation by a judgment, without the trial assured by the Declaration of Rights. We have only to look at the plain directions of the act, to perceive that it provides for no trial, in any proper or judicial sense; that it permits and requires a judgment of forfeiture, if no proof, or if proof not satisfactory to the magistrate, is offered by the respondent. In this respect, this enactment is in violation of the plain dictates of justice, and contrary to the letter and spirit of the Declaration of Rights. This statute declares that a subject may be deprived of his property under the forms of law, without meeting the witnesses face to face, without being fully heard in his defence, in an unusual mode, not by the judgment of his peers, or the law of the land.

Probably it was not the intention of the legislature to direct a proceeding subversive of the rights of the subject; and it is quite probable that magistrates and courts, acting in conformity with the more familiar and established maxims governing the administration of justice, have required proofs on the part of the prosecutor, and given to respondents some of the privileges of a defendant, before proceeding to a judgment. But, in order to judge of the conformity of the enactment with the requisites of the constitution, we must be governed by the terms and provisions of the act itself, and cannot construe it according to any *presumed intention* of the legislature not expressed; especially against an expressed direction.

In a law directing a series of measures, which in their operation are in danger of encroaching upon private rights; vesting in subordinate officers large powers, which, when most carefully guarded, are liable to be mistaken or abused, and which are to direct, limit and regulate the judicial conduct of a large class of magistrates; it is highly important that the powers conferred, and the practical directions given, be so clear and well defined, that they may serve as a safe guide to all such officers and magistrates, in their respective duties; and in these respects, the statute itself must, on its face, be conformable to the constitution.

We have already alluded to section 16 as one of this series of measures, which provides that " if any owner or keeper of liquors, seized as aforesaid, shall appeal," &c. — upon which it is proper to make one or two remarks. It is obvious that this section does not give an appeal in terms, but only hypothetically; nor does it state from what judgment; but we presume it to be from the entire judgment, for forfeiture and fine. It is further to be noticed, that the appellate court is not authorized in terms to render a judgment against the appellant for a fine. But it is important to cite all that part of the section which directs what final judgment the appellate court is to give. It is as follows: " If the final decision shall be against the appellant, that such liquors were intended by him for sale, contrary to the provisions of this act, then such liquors shall be destroyed, as provided in section fourteen." If this clause had stood alone, it might have been plausibly, perhaps strongly argued, that by such " final decision," that such liquors were intended by the appellant for sale, must be understood a judicial decision, to be arrived at in a regular course of trial, upon allegations and proof; thus by implication intending a trial according to the maxims and forms of law. It is hardly to be presumed that the legislature intended to direct a different mode of trial and form of judgment in the appellate court; contrary to the common theory of appeal, which is, to enable a higher court, in a case depending upon the same state of facts and the same rule of law, to reëxamine the judgment of a lower court, and affirm

or reverse the judgment; though perhaps it would be in the power of the legislature to do so, by words sufficiently express to manifest such intention. But if such were the intention, it would leave the objections already made in full force.

If it should be urged that, upon the maxim of construction, that every part of a statute may be resorted to, for expounding every other part, this clause manifests the intention of the legislature that a regular trial shall be had in the proceedings before the magistrate; the answer is, that the directions in regard to the proceedings there, and to those preliminary thereto, as well when there is no appearance and no power of appeal, as when there is, are too plain, explicit and mandatory, to admit of any such construction. Besides; the rights of parties ought not to be made to depend on a doubtful interpretation of various, and in some respects, incompatible and conflicting provisions.

It may be proper slightly to notice an objection to the constitutionality of this law, in so far as it directs the taking of private property for public use, without making any compensation therefor; contrary to article 12 of the Declaration of Rights. We are of opinion, that that clause has no bearing on, and no connection with, this subject. It is a most wise and salutary principle; but relates to another class of subjects and of rights. If spirituous liquor is rightfully taken at all, it is on the ground that it is illegally kept; that being so kept, it is noxious to the public, and *de facto* a nuisance; and when it is adjudged forfeited, it is because it is so noxious and declared to be such by law, the owner's right of property is divested by the judgment, and he can have no claim to compensation.

III. Thus far we have considered this section, as it directs proceedings *in rem* to effect the forfeiture and destruction of liquors. But it also authorizes a judgment for a fine and costs, with an alternative sentence to imprisonment thirty days in case of non-payment; and it is contended that, as a proceeding *in personam,* it is equally repugnant to the constitution.

If this branch of the act treats the case as a proceeding in the administration of criminal justice, to recover a penalty, for a violation of the statute law of the Commonwealth, it is to be

4 *

commenced, prosecuted and conducted, in the manner required by the constitution.

Article 12 of the Declaration of Rights, directs (in addition to the other provisions, common to both modes of prosecution) that no subject shall be held to answer for any crime or offence, until the same is fully and plainly, substantially and formally, described to him. Art. 14. " All warrants, therefore, are contrary to this right, [to be secure from searches and seizures,] if the cause or foundation of them be not previously supported by oath or affirmation."

The offence intended to be declared and punished, by this section, is keeping or depositing spirituous liquor, in any shop or vessel, &c. intended for sale. The statute, after the provisions for a seizure, forfeiture and destruction of the liquor, proceeds to add, that " the owner or keeper of said liquor shall pay a fine of twenty dollars and costs, or stand committed for thirty days, in default of payment, if in the opinion of said court said liquors shall have been kept or deposited for sale, contrary to the provisions of this act."

The statute does not, distinctly and in terms, make the keeping of liquors intended for sale a distinct, substantive offence, punishable by fine; but only circuitously and by implication, through the medium of a search, seizure and forfeiture. The statute does not require the complainants to state, either as fact or belief, that the defendant, or any person designated, has kept, or is keeping liquor for sale, contrary to law. On the contrary, it seems studiously to avoid naming anybody; by requiring the complainants to state their belief that liquors are kept and intended for sale, in the place designated; seeming to look to the result of the search to be made on the warrant, which is to issue on the complaint, to ascertain whether liquors are so kept, and by whom. When they are seized by the officer, the owner or keeper is to be summoned by him, not in pursuance of any direction in the warrant, but upon his own knowledge. Summoned for what? Not apparently to answer to any complaint against him personally; but to enable him to look after his property thus seized, and defend it if he can. The only cogni-

zance which the magistrate can take, the only jurisdiction he has, over the person of any one as owner or keeper, is that derived from the return of the officer on his search warrant; he certifies that he has seized certain liquors described, and summoned a person named, as one whom he knows to be the owner or keeper of the liquors seized. The jurisdiction of the person, such as it is, is incidental to the jurisdiction over the property, obtained by the seizure.

2. But could we regard this as a statute making the keeping of liquor, intended for sale, a distinct substantive offence, punishable by fine, and giving jurisdiction of it to a justice of the peace, as an ordinary case *in personam;* still we think it fails to conform to the constitution, in the articles above cited. There is no complaint setting forth the offence, either fully, substantially or formally. The complaint, required to be made by three voters, has accomplished its office, when it has laid the foundation for the search warrant. The complaint, if it follows the statute, names no one as a party chargeable with the offence of unlawfully keeping; there is no warrant or process to arrest or summon such person; on the contrary, the officer is directed to summon the owner or keeper, if known to him. Suppose the complainant, though not required by the statute, should name some person as owner or keeper, and the officer, upon search, should summon another person, as one known to him to be the owner or keeper; which is the person charged? Which is amenable to the law, and liable to judgment of fine and imprisonment? And against which of them can the magistrate render a judgment *in personam?*

The specific ground, on which this part of the statute, directing proceedings *in personam,* is repugnant to the provisions of the constitution is, that, considered as a charge of a crime or offence, there is no provision for an indictment, information or complaint, on oath or otherwise, in which the specific offence of keeping or depositing spirituous liquors, intended for sale, is in any way described, so that it can be put on record and traversed, or an issue thereon be joined and tried in due course of law

# 44          SUFFOLK AND NANTUCKET.


The return of the officer, which alone can bring before the magistrate the name of an owner or keeper, cannot satisfy the requisites of the constitution; it is not a direct charge against him of keeping liquor, intended for sale; he is not summoned to answer such a charge, but to inform him of the seizure; and the charge is not on oath. The judgment to be rendered for fine and costs is not a distinct, independent judgment, on a charge of a personal offence, but is only incidental to a judgment of forfeiture and confiscation of property. The provision in regard to the judgment *in personam* is, after directing that the liquor shall be declared forfeited and destroyed, that the owner or keeper of said liquor shall pay a fine of twenty dollars, &c. " if in the opinion of said court, said liquors shall have been kept or deposited for sale contrary to the provisions of this act." Now supposing this should be construed to mean a judicial opinion, formed upon examination and proof, it would be obnoxious to the objections of being repugnant to the constitution: First, because it would be a conviction for a penalty, without any substantial and formal charge described and set forth, with opportunity to defend; contrary to the Declaration of Rights; and secondly, because the matter of fact, of which an opinion is to be formed, in order to convict, is not that the respondent, whose name has been returned as owner or keeper, has kept the liquor with intent to sell; but only that the liquors were kept for sale, which might be true, if kept by any other person. A party therefore may be convicted and sentenced to fine and costs, and imprisonment, for an offence neither legally charged, nor legally proved, to have been committed by him.

In the case of Fisher *v.* McGirr and others, several particular exceptions were taken to the regularity of the proceedings, which would require more particular consideration, had we not already come to the conclusion that the section under which the seizure was made, and is now sought to be justified, was unconstitutional and void. Still there is one question to which it is proper to advert. This is in the nature of an action of trespass *vi et armis*, and the question is, whether it will lie

against an officer, who merely acts under the direction of a warrant from a magistrate, and does not go beyond the line of his duty, as marked out by his warrant. This is certainly an important consideration; inasmuch as it is for the interest of the community that subordinate and executive officers should, as far as possible, be protected in the full and fearless discharge of their duties, leaving all responsibility for errors in judgment, and irregularities of process, to rest upon others. But this principle must have some limit; it would be dangerous and injurious to the common rights of citizens, if one man, under the mere color or semblance of legal process, could justify the arrest and imprisonment of the person, or the seizure and removal of the property of another, without any responsibility. And we take the well settled line of distinction to be this: If the magistrate or tribunal, from which the process issues, has jurisdiction, and the process is apparently regular, the officer may safely follow and obey it, and justify himself under it. But if the magistrate has no jurisdiction, the process is not merely voidable, but wholly void; the officer taking property under it, has no authority, and is therefore liable to an action of trespass.

The case already cited of *Entick* v. *Carrington*, 2 Wils. 275, and 19 Howell's State Trials, 1029, was an action of trespass against messengers, under a warrant from a Secretary of State; it being held that the warrant was void, because not within the jurisdiction of the magistrate, the action was sustained, and considerable damages recovered. Where one is committed under process wholly void, trespass will lie. *Groome* v. *Forrester*, 5 M. & S. 314. So, for goods levied upon by order of a magistrate, who had no jurisdiction. *Branwell* v. *Penneck*, 7 B. & C. 536. So, in the Supreme Court of the United States, Marshall, C. J. said: "It is a principle, that a decision of such a tribunal [a court martial] in a case clearly without its jurisdiction cannot protect the officer who executes it." *Wise* v. *Withers*, 3 Cranch, 337. So in New York, when it appears on the face of the process, that the court or magistrate had no jurisdiction, it is void, and affords no protection to the officer who has acted under it; *Savacool* v. *Boughton*, 5 Wend. 172;

but if the court had jurisdiction, and the process is right on its face, though wrongly issued, the officer is justified. *Lewis* v. *Palmer*, 6 Wend. 369. The principle is recognized in many cases in this commonwealth, and is stated by Metcalf, J. by way of illustration, in a very recent case. In case of imprisonment, a jailer is not answerable, "unless he acts under the mandate of an inferior court which has not jurisdiction of the cause, or by virtue of a warrant which, on its face, shows the magistrate's want of jurisdiction." *Folger* v. *Hinckley*, 5 Cush. 266.

The law relied on for a justification, being void, gave the magistrate no jurisdiction and no authority to issue the search warrant, the officer cannot justify the seizure under it, and therefore an action lies against him for the taking.

One other point was taken in argument in this case, which it is proper to consider. It is founded on the latter part of § 19 of *St.* 1852, *c.* 322, which is in these words : " No action of any kind shall be had or maintained, in any court in this commonwealth, for the recovery or possession of intoxicating liquors, or the value thereof, except such as are sold or purchased in accordance with the provisions of this act." On the strength of this provision, it is contended in behalf of the defendant, that no action will lie in the present case. The first and obvious answer, and a conclusive one, so far as the maintenance of the action is concerned, is, that in this action of trespass the right of possession of the liquors taken, or the recovery of their value, is not the gist of the action ; but the breach of the plaintiff's close is the gist of the action, and the taking away of the liquors is one of the aggravating incidents and consequences of the trespass. But as the objection admits of a less technical answer, founded upon broader and more general considerations, and as the same question may arise in this case in the assessment of damages, it seems proper to give a construction to this provision of the act.

Every clause and provision of an act of legislation must be construed according to the manifest intent and purpose of the legislature, which is to be ascertained by a reference to its

general scope, and to all its other provisions. The statute in question contains many provisions, in great detail, but the manifest purpose is to repress intemperance, by prohibiting the purchase and sale of intoxicating liquors, in any other mode than that prescribed and regulated by its terms. But the statute does not declare, nor imply, that there can be no property in intoxicating liquors; on the contrary, it fully recognizes them as property, and of course entitled to the same security and protection by the law, to which other lawful property and possessions are entitled. A manufacturer, under license given pursuant to this act, may have a large amount of distilled spirits, designed for exportation; or a person may have wine or spirits, imported according to law, before or since the passage of this act. Suppose he has occasion to deposit this property with a warehouse-keeper, and the latter refuses to deliver it on request; or it is obtained from him by force or fraud, and he seeks to regain it; to hold that by law he has no remedy, would be to deprive him of a right guarantied by the constitution. It is plain, therefore, that to give the clause in question a literal construction and a general application to all rights and causes of action, respecting this right of property, would be plainly absurd, and could not have been intended by the legislature. The clause therefore requires some construction; and a reference to all parts of the act, and its general scope, will enable us, we think, to perceive what such construction must be. The object of the statute is to regulate the purchase and sale of intoxicating liquors, and this prohibition of any action is declared as one of its penal consequences. It prohibits all actions for such liquors, or their value, except such as are sold and purchased in accordance with the act. The exception shows what was in the minds of the legislature, namely, liquors sold or purchased, and the prohibition of all actions is therefore limited to actions for liquors bought or sold, not in accordance with the provisions of the act. And such is the construction put upon a similar clause in the statute of Maine, and for similar reasons. *Preston* v. *Drew*, 33 Maine, 562, 563

At all events, it would be doing great injustice to the legisla

ture to suppose that by this provision it was intended to extend protection to a mere wrongdoer, and shield him from all legal liability for injuries done to the property of another. If it were possible that such could have been the intention of any legislators, it would be a palpable violation of the eleventh article of the Declaration of Rights, that " every subject ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which he may receive in his person, property or character." The court are therefore of opinion that the plaintiff is not barred of his present action by the clause of the statute relied on, nor can it afford any ground to prevent him from recovering the value of the liquor taken, in the assessment of damages.

*Damages to be assessed, and judgment to be entered for the plaintiff.*

In the case of the Commonwealth *v.* Albro, having come to the decision that the statute which was the sole foundation and authority for these proceedings, in that part of it which provides for a search, seizure and forfeiture of spirituous liquors, is unconstitutional and void, it follows that the exceptions must be sustained, and further proceedings in the case stayed.

It may be proper to remark, upon these proceedings, that the complaint and warrant were so framed, and the proceedings so conducted, as, if practicable, to avoid many of the objections to the constitutionality of the statute. The complaint sets forth that the complainants believe that liquors are " kept and deposited in a warehouse, [described,] occupied by Moses Albro and William A. Anthony, and intended for sale by them the said Albro and Anthony in said Fall River, not being authorized," &c. Here is a direct charge that they kept, with intent to sell, without authority, which is the offence supposed to be created by the statute. So the warrant, after reciting the complaint and the prayer for process, commands the officer, not only to search, and, if found, to seize and keep the liquors; but also to summon said Albro and Anthony to appear before

the police court, and there show cause, if any they have, why said liquors should not be declared forfeited, to be destroyed, and they be adjudged and held to pay a fine of twenty dollars and costs.

It does not distinctly appear how, and upon what evidence, the conviction was in fact had, either before the police court or the court of common pleas; but as it appears upon the bill of exceptions that the government offered no other evidence to prove that Albro was .not licensed, the implication is that upon other points of the case they did offer evidence, and very probably offered evidence to prove that the defendants, or one of them, did own and keep the liquors, and did intend to sell them in Fall River.

But these considerations do not remove the objections to the constitutionality of the statute. The defect of the statute is, that it does prescribe these measures, without the precautions required by the constitution for the safe execution of the law.

Therefore, if particular magistrates and courts, perhaps feeling the force of these objections, and adopting expedients to avoid them or diminish their force, take precautions for that purpose, not required, perhaps not permitted, by the actual terms of the statute, this cannot justify a judgment under so defective a law. The statute is to be carried into operation by hundreds of magistrates and officers, and if it fail in those qualities and characteristics required by the constitution to give it the force of law, and afford the full protection of the law to all those who act under and obey it, it is so far void, and cannot be made good in any particular case, by attempts to supply its defects. *Exceptions sustained.*

In Herrick's case, a question was made by the attorney general whether the prisoner could be relieved on *habeas corpus*, even if the conviction is wrong; and whether his remedy is not by writ of error or *certiorari;* on the authority of *Riley's case,* 2 Pick. 172. We take the distinction to be this: When the proceedings are irregular or erroneous, if the court or magistrate has jurisdiction, the judgment is voidable only, and not void,

and of course must stand good until reversed or annulled in a proper course of proceeding, by a court having authority to revise and annul it. But where it appears, on the face of the proceedings, that the magistrate had no jurisdiction, the proceedings are wholly void, the commitment is without authority, and the party committed is entitled to be discharged from his imprisonment without reversal of the judgment.

The case being rightly before us, the court are all of opinion that, for the reasons already given, that section of the law under which the conviction was had is unconstitutional, and therefore the judgment is void, and the prisoner is entitled to be discharged from custody.

From the mittimus alone, it might appear doubtful whether the prisoner was personally present, or not, when the conviction for the penalty was had ; but on recurring to the justice's minutes of the proceedings, it appears that he was not. No complaint was read to him, and no plea entered for him. Whether in any case a person, charged with a criminal offence, can be convicted and sentenced in his absence, to the payment of a fine and costs, and process issue in the nature of an execution to collect it, we give no opinion. Commonly, on a criminal charge, the party is brought before the magistrate by warrant and arrest, and then he is in a condition to be bailed or committed, and to know and take notice of all orders and proceedings in the case. But if it is competent for the legislature to provide by law that on a charge of a crime or misdemeanor the process may be by summons instead of arrest, it is necessary that the summons contain a full and direct statement of the offence charged, and specify a time when, a place where, and the tribunal before which, he is to appear and answer.

Again; the mittimus appears to us to be erroneous, and founded on a misconception of the law, in this : After reciting the conviction, it directs the jailer to arrest and keep the prisoner thirty days, or, until he shall comply with the sentence — that is, as we understand, unless he shall sooner pay the fine and costs. This appears to us to be irregular. The alternative judgment, to pay or stand committed, is passed in the first

instance, and the person convicted has his election; but if he does not pay, which the justice is to know and determine, then the alternative part of the judgment, to stand committed thirty days, becomes absolute. The imprisonment is to be the punishment, and is not used as a means to enforce payment of a fine and costs; and the mittimus issues accordingly. No alternative remains; the officer or jailer has no authority to receive the money and discharge the prisoner within thirty days.

One other remark occurs to us on these proceedings, showing that the law is practically construed, as we construe it; which is, that the proceeding for the fine, and that for the forfeiture, are connected together and dependent on each other. The costs, with which the defendant is charged, are not merely the costs of a proceeding *in personam*, as on a separate and independent process, but include all the expenses of the seizure, keeping and destruction of the liquors, under the other branch of the judgment.

These considerations are not necessary to the decision of this case, which rests on the grounds taken in the principal opinion; but they seem naturally to arise from the view there taken, and tend to explain it.

*Ordered that Josiah Herrick be discharged from his imprisonment.*